CHARLES C. BOYKIN, HARRY EDWARDS AND C. A.
LANDER, PLAINTIFFS IN ERROR, VS. THE STATE OF
FLORIDA, DEFENDANT IN ERROR.

Criminal Law—Trespass on Land—Tax Receipts as Evidence of
Payment—Proof of Handwriting Not Necessary to Admit
Letters Received in Reply—Evidence Erroneously Admitted
is Harmless if Fact it Proves is Admitted to be True—Dis-
charging Accused Before Verdict for Want of Evidence—Par-
ty Complaining of Errors Must Make Them Apparent—Claim
of Title to Lands Tresspassed Upon, When a Defense.

1. While an official tax receipt is strong evidence of the fact
   of payment of taxes, yet it is not the exclusive method of
   proving such payment, but such payment may exist as a fact,
   and may be established orally whether an official receipt be in
   existence to evidence it or not.

2. The rule is that where a letter is addressed to á party at his
   postoffice address and is sent by mail, and a reply thereto,
   purporting to be from the party to whom it is sent is received
   by the sender of the letter in due course of mail, such reply
   letter is admissible in evidence without proof that it is in the
   handwriting of, or signed by, the party purporting to have
   sent it.

3. Where evidence is erroneously admitted to prove a fact that
   is conceded or admitted on the trial to be true, the error in
   admitting improper evidence to prove such conceded facts is
   harmless.

4. There is no law or rule of practice that will permit a trial
   judge on the motion of the accused in a *criminal* case, to
   take such case from the jury in the midst of its trial and grant
   a peremptory discharge of the accused from custody before a
   verdict is rendered, on the ground that no evidence has been
   adduced to connect him with the crime.

5. It is the duty of a party appealing to an appellate court to
   make the errors *apparent* of which he complains; and where
   in the examination of witnesses on the trial, any of his ques-
   tions have been excluded on objection, and such questions do
   not in and of themselves indicate whether the answers thereto
   will be material or pertinent evidence or not, it is his duty, in
   order to have the rulings thereon reviewed on appeal, to
   make an offer at the trial of what he proposes to elicit or prove
   by such questions, so that both the trial and appellate court

Boykin et al. v. State of Florida.—Opinion of Court.

can determine whether the proposed evidence is material or not; otherwise he fails to make his alleged error to appear, and the appellate court will so declare.

6. In a prosecution for criminal trespass upon land under the provision of Section 2516, Revised Statutes, it is error for the court to charge in effect, "that if a party trespasses in the face of direct and positive warning from the legal owner who is in possession, no adverse claim or color of title will excuse the trespass, or the severance and carrying away of anything from the freehold." The real issue in such cases is, did the defendant *wilfully* commit the trespass alleged without any lawful justification or excuse? If, in the commission of the acts complained of, the defendant acts under the *bona fide* and *reasonable* belief that he had a lawful right so to act, under a claim of title to the property, either in himself, or in others from whom he has derived authority, he cannot properly be convicted under this law, whether the true or legal owner of the land was in the legally presumptive possession thereof or not, and whether such owner or his agent expressly forbade the acts or not. When in such a case, the defense of a claim of title it set up, the defendant must show that he not only entered under a *bona fide belief* in his right to enter, but that he had *reasonable grounds* for such belief; and the *bona fides* and *reasonableness* of such belief on the defendants' part are questions for the jury to decide from all the facts and circumstances of the case. It is error in such a case to instruct the jury that the belief of right to enter on the part of the trespasser, in order to excuse, must be such as would actuate a *"prudent"* man.

Writ of Error to the Criminal Court of Record for Orange County.

The facts in the case are stated in the opinion of the Court.

*L. G. Starbuck* for Plaintiffs in Error.

*The Attorney General* for Defendant in Error.

TAYLOR, C. J.:

The plaintiffs in error were jointly convicted in the Criminal Court of Record in Orange county of

the charge of criminal trespass upon land, and from a sentence imposing a fine take writ of error to this court.

The first assignment of error, predicated upon the court's refusal of an application for severance of trial as to one of the defendants, is expressly abandoned.

A State witness after testifying that he was President of the corporation alleged to be the owner of the land trespassed upon, was asked the question in reference to said land: "Have you paid the taxes?" This question was objected to by the defendants, on the ground that the receipts and records were the best evidence. The objection was overruled, and this ruling constitutes the second assignment of error. The witness in answer to the question said: "I have paid the taxes ever since we purchased the land." Then immediately afterwards, on cross-examination, stated that "I paid part of the taxes myself and Garrett paid part of them." After the last answer the defendants moved the court to strike out so much of the evidence as related to the payment of taxes, on the ground that it was not within the witness' knowledge. The court overruled the motion, and such ruling constitutes the third assignment of error. There was no error in either of these rulings from the standpoint of the special objections made. Ordinarily when the fact of the payment or non-payment of taxes is a question directly at issue in a suit, the official receipts required by law to be issued by the tax gatherer as evidence of such payment would probably be the most persuasive evidence of the fact of payment. But in this case the payment of the taxes on the lands trespassed upon was a collateral question of proof, and there was no impropriety in permitting the witness to state, as an abstract fact within his knowledge, that he had paid the taxes on the land, without exhibiting the official receipts that evidenced such payments. While an official tax receipt is strong evidence of the fact of payment of taxes, yet it

is not the exclusive method of proving such payment, but such payment may exist in fact and may be established orally whether an official receipt be in existence to evidence it or not.    Blackwell on Tax Titles, §489; Davis v. Hare, 32 Ark. 386; McDonough v. Jefferson County, 79 Texas, 535, 15 S. W. Rep. 490; Adams v. Beale, 19 Iowa, 61; Hammond v. Hannin, 21 Mich. 374, S. C. 4 Am. Rep. 490; Elston v. Kennicott, 52 Ill. 272; Richards v. Hatfield, 40 Neb. 879, 59 N. W. Rep. 777. The motion to strike the evidence as to the payment of taxes was properly overruled, as it had not been shown, at the time the motion was made, that the witness did not, of his own knowledge, know of such payments. When he answered that he had paid part of the taxes himself, and Garrett had paid the other part of them, this did not show that he was testifying from hearsay. He may have seen Garrett pay the taxes paid by him, and thus known actually of his own knowledge that they were paid in fact by Garrett as well as by himself.

The fourth and fifth assignments of error are expressly abandoned.

D. B. Stewart, a witness for the State, after testifying that he was one of the original incorporators of the alleged corporate owner of the land trespassed upon, and that he looked after the company's lands for it, and that he had interviewed the defendants Boykin and Edwards about their cutting of the cedar on the lands that constituted the prosecuted trespass, and that they told him they had cut it under authority from the defendant Lander who represented Ramsey or Ramsey & Co., who had a tax deed to the land, and that they had bought the timber from Lander, agreeing to pay $50 therefor, produced a letter to himself (the witness) purporting to have been written and signed by the defendant Lander, and stated that he (the witness) had written to Lander about the trespass on the land, and in due

course of mail received from him in reply the letter that he then produced. Thereupon the letter from Lander, thus identified, was offered by the State in evidence, but was objected to by the defendants, on the grounds that it was immaterial, and that the connection of the defendants or either of them therewith had not been proved, nor any proof made of handwriting. The judge overruled the objections and admitted the letter in evidence, and this ruling is assigned as the sixth error. There was no error in this ruling. The letter, while practically of little importance in the case, can not be said to be so immaterial as to warrant an adjudication that it was error to admit it. It, at least, corroborated the witness' testimony to the effect that he had written to Lander and received this letter in reply; and it also tended to establish some connection between Lander, its writer, and the other two defendants in the matter of the alleged trespass. The contention that this letter was inadmissible because it was not first shown that it was in the handwriting of Lander, whose letter it purported to be, is untenable. The rule is that where a letter is addressed to a party at his post office address and is sent by mail, and a reply thereto, purporting to be from the party to whom it is sent is received by the sender of the letter in due course of mail, the letter thus received in reply is admissible in evidence without proof that it is in the handwriting of, or signed by, the party purporting to have sent it. I Greenleaf on Evidence (15th ed.), §573a; Ovenston v. Wilson, 2 Car. & Kir. (61 Eng. C. L.) 1; Campbell v. Woodstock Iron Co., 83 Ala. 351, 3 South. Rep. 369.

A State witness testified that in the summer of 1896 he shipped from a railroad station, in the vicinity of the land alleged to have been trespassed upon, for the defendants Boykin and Edwards, 550 feet of hewed cedar timber, and that afterwards the defendant Boykin depos-

ited with him $50 which was to be paid out on Boykin's
order for the cedar when it was decided who owned it;
that it was to be paid to either the defendant Lander or
to D. B. Stewart; that this money was paid out on Boy-
kin's order. The witness then stated: "I think I know
to whom it was paid." The State attorney then asked
the following question: "To whom was that money
paid?" To this question the defendants objected, on the
ground that it was not shown that the fact sought by
the question was within the witness' own knowledge. The
court overruled the objection and permitted the ques-
tion to be asked and answered. This ruling is assigned
as the seventh error. The witness' answer was that it
was paid to C. A. Lander, and that he (witness) kept it
quite a while before it was paid out. Then immediately,
on cross-examination, the witness further stated that he
did not pay the money to Lander, nor did he see it paid;
that he did not know how he knew it was paid to Lan-
der, but thought that he knew it. The defendants then
moved to strike out the witness' testimony as to the pay-
ment of the money to Lander, on the ground that it was
shown that it was a matter not within the witness' own
knowledge, but that he testified from hearsay. The
court overruled the motion, and this ruling is assigned
as the eighth error. Even if it be admitted that the
court erred in both of these rulings, it is immaterial and
harmless error in this case, because of the fact that after-
wards the defendant Lander admitted, while testifying
as a witness for the defendants, that he had received the
money and had forwarded it to his principal for whom
he acted as agent in the sale of the timber to his co-de-
fendants. The rule is, that where evidence is erroneous-
ly admitted to prove a fact that is conceded or ad-
mitted on the trial to be true, the error in admitting
improper evidence to prove such conceded fact is harm-
less. 2 Ency. Plead. & Prac., note on page 558; State

v. Potts, 83 Iowa, 317, 49 N. W. Rep. 845; Phenix Ins. Co. v. Pickel, 3 Ind. App. 332, 29 N. E. Rep. 432; Atchison, Topeka & Santa Fe R. R. Co. v. Collins, 47 Kansas, 11, 27 Pac. Rep. 99.

Upon the announcement by the State attorney that the State had closed and rested its case, the defendant Lander moved for a dismissal of the cause as to himself and to be discharged from custody, upon the ground that no evidence had been introduced connecting him with the alleged trespass, and because there was no evidence of his guilt beyond a reasonable doubt. The court denied the motion, and this ruling is assigned as the ninth error. We know of no practice in *criminal* proceedings that will permit a judge in the midst of a trial upon a criminal charge to take the case from the jury, and peremptorily discharge the accused from custody before a verdict is rendered, as was sought to be done by this motion. Section 1088 of the Revised Statutes, fully construed in the C. B. Rogers Company v. Meinhardt Bros. & Co., 37 Fla. 480, 19 South. Rep. 878, provides that if upon the conclusion of the argument of counsel in any *civil* case after all the evidence shall have been submitted, it be apparent to the judge of the Circuit Court, or county court, that no evidence has been submitted upon which the jury can lawfully find a verdict for one party, the judge may direct the jury to find a verdict for the opposite party. But this statutory provision, it must be observed, is confined to *civil cases,* and does not extend to criminal trials. Suppose the defendant's motion had been granted, what manner of *judgment* could the court have entered upon its records so far as the discharged defendant was concerned? Certainly no judgment of *acquittal* could properly have been entered, that would afterwards have supplied the basis of a plea of *antrefois acquit*, because the defendant had been put for trial upon the country, that is before a jury,

either for acquittal or conviction *by such jury's verdict,* and only upon *a verdict* could a *judgment* of conviction or acquittal be predicated.    Such a motion might be in place at a preliminary trial before a committing court, that enquires simply into the question of the existence of cause *for detention* of an accused person, but, under our laws, it has no place at the ultimate trial as to the guilt or innocence of the accused.    If at such trial the State makes no case against him, he is entitled to a *verdict* of acquittal *at    the hands of the jury,* and to a record judgment of discharge, and not simply to an informal order from the judge for such discharge, as was sought for by this motion. The court ruled correctly in denying the motion.

The defendants at the trial propounded to two different witnesses the general question :    "What relations existed between R. H. Ramsey and Charles C. Warwick?" but, upon objection by the State the judge refused to allow the questions to be answered, and these rulings are assigned as the tenth and eleventh errors. There was no error in these rulings. The excluded questions did not in and of themselves indicate the materiality or pertinency of the evidence expected in reply thereto, and no exposition was made as to what *evidence* was expected to be elicited in reply thereto.    Neither this court nor the trial court could, therefore, say whether the excluded evidence was material or pertinent or not. It is the duty of a party appealing to an appellate court to make the errors *apparent* of which he complains, and unless he does so the appellate court can not declare error.    The rule in such cases is, that where a question to which an objection is sustained on the trial does not itself indicate whether the answer to it will be material or pertinent evidence or not, the party seeking to introduce the evidence must, in order to have the ruling reviewed on appeal, make an offer of what he pro-

poses to prove, so that the trial and appellate court can determine whether the proposed evidence is material or not, otherwise he fails to make his alleged error to appear, and the appellate court will so declare.    Marshall v. Hancock, 80 Cal. 82, 22 Pac. Rep. 61; Houghton v. Clarke, 80 Cal. 417, 22 Pac. Rep. 288; Dreher v. Town of Fitchburg, 22 Wis. 675, S. C. 99 Am. Dec. 91; Hill v. Truby, 117 Pa. St. 320, 11 Atl. Rep. 89, 300; Smethurst v. Barton Square Church, 148 Mass. 261, 19 N. E. Rep. 387; Crowley v. Appleton, 148 Mass., 98, 18 N. E. Rep. 675; Best v. Hoeffner, 39 Mo. App. 682; Cook v. Haussen, 51 Ill. App. 269; Graeter v. Williams, 55 Ind. 461; Paddleford v. Cook, 74 Iowa, 433, 38 N. W. Rep. 137; Tolbert v. State, 87 Ala. 27, 6 South. Rep. 284.

The tenth instruction given by the court to the jury was as follows:    "When there is no actual occupancy of land, or such possession as the law determines not to be adverse, the law casts the possession with the legal title. And in the face of direct and positive warning from the legal owner who is in possession, no adverse claim or color of title will excuse trespass or the severance and carrying away of anything from the freehold."    This charge was duly excepted to, and constitutes the twelfth assignment of error. The court erred in giving this instruction.    The prosecution here is based upon the following section 2516 of the Revised Statutes: "Whoever wilfully commits a trespass by cutting, scraping, injuring or destroying timber or wood standing or growing on the land of another, or by carrying away any kind of timber or wood, cut down or lying on such land, or by digging or carrying away any stone, ore, gravel, clay, sand, turf, or mould from such land, or by carrying away anything which is parcel of the realty, shall be punished as if he had stolen personal property of the same value." There is nothing in this statute that makes

the giving of notice or warning an essential element in the commission of the crime forbidden thereby; or that causes the giving of notice or expression of protest by the real owner to an alleged trespasser to aggravate the offense in any way, or to deprive the alleged trespasser of the defense of having committed the acts under a *bona fide* claim of right and ownership, when such defense exists. The real issue in the case was: Did the defendants *wilfully* commit the trespass alleged without any lawful justification or excuse? If, in the commission of the acts complained of, the defendants acted under the *bona fide* and *reasonable* belief that they had a lawful right so to act, under a claim of title to the property, either in themselves or in others from whom they derived their authority, they can not properly be convicted under this law, whether the true owner of the lands was in the legally presumptive possession thereof or not, and whether the true owner or his agent expressly forbid the acts or not.

When the defense is interposed in such cases of a claim of right or ownership in the land trespassed upon the giving of notice or warnings by the true owner to the trespasser is proper evidence tending to rebut the asserted claim of right set up by the trespasser and to show knowledge on his part of the true ownership, but the giving of such notice does not deprive the trespasser of the defense that his acts were committed under a *bona fide* and reasonable belief that he had the lawful right to commit them under a claim of title or right in the property trespassed upon. The *bona fides* and reasonableness of the defendant's belief that he has the right to do what he does under a claim of title to the land upon which he operates in himself or in others under whom he acts, is a question for the jury to decide from all the facts and circumstances of the case. In the trial of an indictment for wilful trespass on land, the defend-

ant must show that he not only entered under a *bona fide* belief in his right to enter, but that he had reasonable grounds for such belief. State v. Glenn, 118 N. C. 1194, 23 S. E. Rep. 1004; Savannah, Florida & Western Ry. Co. v. State, 23 Fla. 579, 3 South. Rep. 204; People v. Stevens, 109 N. Y. 159.

The court gave also the following charge to the jury, numbered 12: "To excuse one in a prosecution for criminal trespass on the lands of another, where the defense is based on a claim of right of title, the defendants must have acted in good faith and believed that said claim or title was a valid one, and must be based on such a state of facts as one acting as an ordinary prudent man would assert under like conditions and circumstances; and if the defendants did not act in good faith of title, or if such a state of facts did not exist as to justify them in the honest belief of a valid claim, acting as prudent men, then they can not justify the trespass on that ground." This charge is excepted to and is assigned as the thirteenth error. This charge was erroneous because of its requirement that the belief of right on the part of the trespasser, in order to excuse, must be such as would actuate a "prudent" man.

There are various other errors assigned upon refusals to give various instructions requested by the de fendants. Without discussing them in detail it is sufficient to say that as presented to the court there was no error in their refusal.

For the errors found the judgment is reversed and a new trial ordered.