## Charles G. Walter *v.* Carl Erdman, Appellant.

*Actions—Slander—Abatement of—Death of plaintiff—Motion to quash—Substitution of administrator.*

A judgment in an action of slander was entered before the death of the plaintiff and application duly made and allowed to substitute the administrators of the plaintiff who had died pending an appeal to the Superior Court. In the Superior Court a motion in abatement of the suit to quash the original writ was made by the appellant, and a petition for leave to suggest death of appellee and substitute his administrator was made at the same time by the appellee. *Held.* that the motion to quash must be refused on authority of Wood v. Boyle, 177 Pa. 620, and that any irregularity in entering judgment in favor of a plaintiff who is dead when the judgment is pronounced is cured by Act 17, Charles II, Chap. 8, in force in Pennsylvania, and that therefore, the administrator may be substituted.

*Practice, C. P.—Answer to points.*

The refusal specifically to affirm points is not error when the questions were fully disposed of in the general charge in a way which met the propositions raised in the points, and reference is made to the charge.

*Slander—Pleading—Province of the innuendo—Province of jury.*

The province of an innuendo is not to introduce new matter or enlarge the material meaning of words, or put upon them a construction they will not bear. Its office is to define the defamatory meaning which the plaintiff sets upon the words ; to show how they came to have that meaning and how they relate to the plaintiff. If they are capable of the meaning he ascribed to them, it is for the jury to say whether they are used in that sense.

*Slander—Actionable words—Evidence—Question for jury.*

The words " thief " and " defaulter," used with the meaning to charge that the plaintiff had been and was guilty of the crimes of larceny, fraud and embezzlement ; " came of a disreputable and dishonest family ; " and was " a person unworthy of trust, confidence and respect, " are actionable per se ; the law implies that their use is wilful and malicious and that they import damages. All the words spoken at the time, even if not action-

able per se, may properly be stated and given in evidence, for they explain and show the animus of the principal charge.

The evidence being conflicting as to whether actionable words were used, the question is properly for the jury and a verdict will not be disturbed when the plaintiff's evidence is sufficient, if believed, to sustain the charge.

Argued March 9, 1897. Appeal, No. 41, March T., 1897, by defendant, from judgment of C. P. York Co., Aug. T., 1896, No. 20, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER and ORLADY, JJ. Affirmed.

Trespass sur slander. Before STEWART, J.

The facts sufficiently appear in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $250. Defendant appealed.

*Errors assigned* were (1) in refusing the defendant's first point, said point and the court's answer thereto, being as follows :—" 1. Only such words are actionable per se, as charge an offense that would, if true, subject the party so charged, to an indictment for a crime involving moral turpitude, or subjecting him to an infamous punishment. In this case the only one of the slanderous words laid in the plaintiff's statement, (viz : ' thieves,' ' liars,' 'rascals ' and ' defaulters,' ) which is actionable in itself, and for the use of which defendant can be held liable in damages, without proof of special damages, is the word ' thieves ;' and the jury before they can find for the plaintiff, must find from the evidence that said slanderous word was actually applied to the plaintiff by the defendant. *Answer :* Refused."

(2) In refusing the defendant's second point, said point and the court's answer thereto, being as follows :—" 2. The words ' liars,' ' rascals ' and ' defaulters,' as laid in plaintiff's statement, and as therein alleged to have been used by the defendant against the plaintiff are not actionable, per se, and the plaintiff having proven no special damages in the case, the jury cannot legally award any damages in favor of the plaintiff, or against defendant for the alleged use of said words, or any of them, as laid in plaintiff's statement. *Answer :* Refused."

(3) In refusing the defendant's fourth point, said point and

the court's answer thereto, being as follows :—" 4. The jury cannot assess punitive damages in this case for the use of any of the alleged slanderous words by the defendant, which were not actionable per se ; and if they find from the evidence that such words as were actionable per se, were used by the defendant, upon provocation by plaintiff in the heat of a controversy, without actual malice on the part of the defendant in their use ; or if they were used in the argument of his case to the arbitrators and were merely intended as comments on the evidence in the case, without malice, or a special intent to injure plaintiff, the jury cannot award punitive or exemplary damages. *Answer :* Refused."

(4) .In charging the jury as follows :—" Now, then, the question is did he utter the other words ? Did he say of the Walter family, and did he say to Charles Walter that they were ' thieves ' and ' defaulters ? ' These words are actionable per se. That is, if the plaintiff proves to your satisfaction that the defendant did use those words in reference to him, then he is entitled to recover a verdict at your hands ; and he does not need to show either that the defendant uttered them maliciously, nor that he sustained any damages by reason of his utterance of them. The law implies both, if he did utter them,—not only that they were wilful and malicious, but that they import damages. That was such an infraction of his character as entitles him to compensation, if you believe he uttered them. And if you believe that he uttered them, then you may consider in connection with them the other abusive words, ' liar ' and ' rascal ' used in connection. But you can only consider them in case you find that he did utter either the word ' thieves ' or ' defaulters.' If you find from the evidence that he used either the words ' thieves,' or the words ' defaulters,' and used it or them in reference to this plaintiff, then he is entitled to your verdict."

(5) In charging the jury as follows : " In order to find a verdict, you must be satisfied from the weight of the evidence that these words were spoken, that the words ' thieves and defaulters ' were spoken, or either ' thieves ' or ' defaulters ' because, as I said to you in the beginning, if you find that Mr. Erdman used either the word ' thief ' or ' thieves,' or the word ' defaulter ' or ' defaulters ' in reference to this plaintiff, then he is entitled to your verdict."

(6) In charging the jury as follows: "You can go one step further than that. You can assess the damages against the defendant to such an extent as to punish him for having used this kind of language toward the plaintiff, if you find that he did use it, so as to deter others from the use of like language, as well as to deter him. Compensation is the general and usual rule; whatever sum of money you think would be a proper compensation to the plaintiff for the injury he has sustained, if he has sustained any, that is, in the publication of the slander, if the defendant has used either of these words about him, under the circumstances testified to. But I say you have it in your power to go further than that, and give damages to vindicate him, and to punish the defendant, if you see proper."

*Nevin M. Wanner*, with him *C. E. Ehrhart*, for appellant.— The word "defaulter" may or may not impute a criminal offense, according to the circumstances under which it is uttered. It does not ex vi termini describe an offender against the criminal code of Pennsylvania, or one subject to indictment at the common law. For this reason, an innuendo was necessary in the statement to show that a criminal default, viz: an embezzlement, was charged by the defendant: 13 Am. & Eng. Ency. of Law, 353.

Without it a declaration would have been demurrable, Odgers on Libel and Slander, 98, but an innuendo is only a device of pleading. It is not evidence. It might enlarge or extend the natural and ordinary sense and meaning of a word, or perform the function of testimony: Odgers on Libel and Slander, 101.

It was error, therefore, for the court to say to the jury that the word "defaulter" was actionable per se.

The words "liars," "rascals" and "defaulters" are not actionable per se under the Pennsylvania authorities: Davis v. Carey, 141 Pa. 314; Klumph v. Dunn, 66 Pa. 141; Beck v. Stitzel, 21 Pa. 522; Odgers on Libel and Slander, sec. 121; 13 Am. & Eng. Ency. of Law, 349, 365.

Where words are capable of several constructions, the sense in which they are used is a question for the jury, to be determined from the impression they were calculated to make on the minds of the hearers, under all the facts and circumstances: Hays v. Brierly, 4 Watts, 392; Herst v. Borbridge, 57 Pa. 62.

*Henry C. Niles*, with him *George E. Neff*, for appellee.—When the words are capable of the meaning ascribed to them in the innuendo, it is for the jury to say whether they were used in that sense: Price v. Conway, 134 Pa. 340; Com. v. Keenan, 67 Pa. 203.

Where words may be taken in a double sense the innuendo is used in order to attach such meaning to them as plaintiff claims was intended: Stitzell v. Reynolds, 59 Pa. 488.

All the words spoken at the time may properly be stated and given in evidence, for they explain and show the animus of the principal charge: Klumph v. Dunn, 66 Pa. 141.

The amount of damages and whether exemplary is entirely for the jury: Barr v. Moore, 87 Pa. 385.

After verdict for plaintiff, the conclusion of law is that the words were spoken maliciously: Andres v. Koppenheafer, 3 S. & R. 355.

OPINION BY ORLADY, J., April 12, 1897:

This action in trespass sur slander was instituted April 29, 1896, and proceeded in to judgment on a verdict January 8, 1897.

An appeal to this court by the defendant was perfected January 18, 1897.

On February 7, 1897, Charles D. Walter, the plaintiff in the action, died.

On February 23, 1897, letters of administration on the estate of Charles D. Walter were granted by the register of wills of York county to the Security Title and Trust Company of York, Pa. and on argument of this cause, when called March 8, 1897, the administrator presented its petition, setting forth the above facts, and prayed that the death of the plaintiff be suggested, that it, as administrator be substituted as appellee, and be permitted to enter the plea to the assignments of error by the appellant of " in nullo est erratum."

At the same time the appellant by counsel presented affidavits, setting forth the death of Charles D. Walter after taking out the appeal, and before assignments of error therein in this court; and moved the court in abatement of the suit, to quash the original writ, the statement and declaration filed at the costs of appellee, etc.

These motions were first argued, and in disposing of, what may be considered in some states, a disputed question, we have recent authority from our own Supreme Court in resolving it in favor of the appellee.

In Wood v. Boyle, 177 Pa. 620, the action was trespass for libel ; after verdict and before judgment was entered thereon, the plaintiff died. A rule was taken to show cause why the judgment should not be arrested. Two terms had not elapsed since the verdict was rendered, the rule was discharged and a judgment entered by order of the court. The defendant appealed to the Supreme Court, and made the refusal of the court to arrest the judgment the subject of an assignment of error. On the authority of Chase v. Hodges, 2 Pa. 48, and Murray v. Cooper, 6 S. & R. 126, the judgment was sustained.

In the case before us judgment was entered before the death of the plaintiff, an application was made to substitute the administrators on the first day after in a court having authority to amend the record. Any error or irregularity in entering judgment in favor of the plaintiff who is dead when the judgment is pronounced, is cured by the Act of 17 Charles II. chap. 8, which is reported by the judges as in force in Pennsylvania: Robert's Digest, 377.

This statute provides that " in all actions, real, personal or mixed, the death of either party between the verdict and the judgment shall not hereafter be alleged for error, so as such judgment be entered within two terms after such verdicts " and its binding force in Pennsylvania is recognized in Griffith v. Ogle, 1 Binn. 172; Murray v. Cooper, 6 S. & R. 126 ; Chase v. Hodges, 2 Pa. 48.

At common law, personal actions did not survive to heirs or personal representatives, and had the plaintiff died before trial the action could not have been prosecuted by this appellee, nor would it be saved by section 28, Act of February 24, 1834, P. L. 73, as " actions for slander, for libels and for wrongs done to the person " are expressly excepted from its provisions.

The administrator is substituted and the motion to quash the appeal is overruled.

The defendant at an arbitration at which he was his own counsel, was charged with saying of the plaintiff in that action in the presence of a number of his relations : " that the whole

Walter family were thieves, liars, rascals and defaulters" and soon after, when approached by Charles D. Walter and asked if he knew him, replied that he did not and did not want to, and when informed that he was of the Walter family, was then asked: "How came you to say that all the Walter family are liars, thieves, rascals and defaulters," the defendant replied: "You are no better than the rest, you are a liar, a thief, a rascal and a defaulter, and ought to be driven out of Hanover."

The innuendo in plaintiff's statement, in giving the explanation and meaning of the words used was "meaning thereby then and there, to charge that plaintiff had been and was guilty of the crimes of larceny, fraud, and embezzlement; came of a disreputable and dishonest family; and was a person unworthy of trust, confidence and respect."

The defendant's 1st, 2d and 4th points covered by the first, second and third assignments of error were refused, the questions were fully disposed of in the general charge in a way which met the propositions raised in the points, and the jury were plainly told, "In order to find a verdict, you must be satisfied from the weight of the evidence that these words were spoken, that the words 'thieves' and 'defaulters' were spoken or either 'thieves' or 'defaulters' because as I said to you in the beginning, if you find that Mr. Erdman used either the word 'thief' or 'thieves' or the word 'defaulter' or 'defaulters' in reference to this plaintiff, then he is entitled to your verdict." (Fifth assignment.) And again: "Now, then, the question is did he utter the other words? Did he say the Walter family, and did he say to Charles Walter that they were 'thieves' and 'defaulters?'" These words are actionable per se. That is, if the plaintiff proves to your satisfaction that the defendant did use those words in reference to him, then he is entitled to recover a verdict at your hands; and he does not need to show either that the defendant uttered them maliciously, nor that he sustained any damage by reason of his utterance of them. The law implies both, if he did utter them,—not only that they were wilful and malicious, but that they import damages. That was such an infraction of his character as entitles him to compensation, if you believe he uttered them."

Taken in connection with the concluding paragraph of the charge, viz: "Webster defines the word 'defaulter' to be one

who makes default; who fails to perform a public duty; who fails to account for public money intrusted to his care ; a delinquent." " One of the words used in this statement is the word " defaulter." The plaintiff alleges in the statement that the word " defaulter," as used by the defendant, means an embezzler; that he had been guilty of fraud or embezzlement. The word " defaulter " may be used either to charge a criminal offense, or an offense not criminal. Therefore the plaintiff in his statement alleges that the meaning that Carl Erdman intended by the word " defaulter," was to charge him with having committed, or being guilty of, an embezzlement, or of committing a fraud. Before you can find a verdict based upon that word " defaulter," you must find that Carl Erdman, when he made the charge, intended to impute to the plaintiff that he had been guilty of embezzlement; such an one as he would be indictable for at law, and for which he could be punished criminally," the question was properly submitted.

The defendant denied using the words " liar " and " defaulter " or that he knew the meaning of the latter.

The evidence was conflicting but there was sufficient to justify the verdict.

An innuendo cannot introduce new matter or enlarge the material meaning of words, or put upon them a construction they will not bear. The office is to define the defamatory meaning which the plaintiff sets upon the words ; to show how they come to have that meaning, and how they relate to the plaintiff. If they are capable of the meaning he ascribes to them, it is for the jury to say whether they are used in that sense: Price v. Conway, 134 Pa. 340, and Wallace v. Jameson, 179 Pa. 98.

To aid in interpreting the meaning of the words "thieves," "liars," "rascals" and "defaulters" as applied to the plaintiff the jury had the testimony of the defendant, " I said to John Walters you are a set of liars, rogues, and you ought to have been drove out of Hanover and over to Maryland, the same you was at Oxford of Adams county."

All the words spoken at the time may properly be stated and given in evidence; for they explain and show the animus of the principal charge : Klumph v. Dunn, 66 Pa. 141.

The several assignments of error are overruled and the judgment is affirmed.